RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0061p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

CHRIS DAVIS,

*Plaintiff-Appellant*,

*v.*

No. 19-1241

JAMES GALLAGHER,

*Defendant-Appellee*.

─────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:16-cv-01405—Janet T. Neff, District Judge.

Argued: December 13, 2019

Decided and Filed: February 28, 2020

Before: GILMAN, KETHLEDGE, and READLER, Circuit Judges

─────────────

## COUNSEL

**ARGUED:** Judy E. Bregman, BREGMAN & WELCH, Grand Haven, Michigan, for Appellant.
Jared D. Schultz, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan,
for Appellee. **ON BRIEF:** Judy E. Bregman, BREGMAN & WELCH, Grand Haven,
Michigan, for Appellant. Austin C. Raines, OFFICE OF THE MICHIGAN ATTORNEY
GENERAL, Lansing, Michigan, for Appellee.

─────────────

## OPINION

─────────────

CHAD A. READLER, Circuit Judge. The parties have presented irreconcilable versions
of the material facts underlying Plaintiff Chris Davis's malicious prosecution claim. When there

is evidence to support each version of the parties' dueling allegations, summary judgment is not appropriate—even when the evidence includes self-serving statements from the parties. In light of that conflicting evidence, we **REVERSE** the district court's award of summary judgment to Defendant James Gallagher on Davis's malicious prosecution claim. We **AFFIRM** in all other respects.

## I. FACTS AND PROCEDURAL HISTORY

Chris Davis, an African American male inmate at the Ionia Correctional Facility in Michigan, had a dispute with James Gallagher, one of the facility's corrections officers. According to Davis, as he was leaving breakfast one morning, Gallagher called him "Bubba" and asked where he was going. Davis did not respond. Gallagher then called Davis "boy" and demanded an answer to his question. Davis told Gallagher that "Bubba" and "boy" are racist terms. Davis also told Gallagher he might file a grievance over Gallagher's perceived racism. According to Davis, Gallagher responded by telling him that "the next time I call you, you'd better acknowledge me or I will put your ass in the hole, boy."

Although Gallagher does not dispute the details of his initial interaction with Davis, at least for purposes of summary judgment, he deeply disputes Davis's accounting of a second interaction between the two later that day.

*Davis's version.* As he was leaving the lunchroom, Davis ran across Gallagher. Gallagher asked him, "Hey Bubba, what's that in your hand?" Davis told Gallagher it was "season salt" and repeated his earlier complaint that "Bubba" was a racist term. According to Davis, Gallagher then "searched" Davis and planted heroin in Davis's pocket. Gallagher also wrote a misconduct ticket and incident report which alleged—falsely, according to Davis—that Davis possessed heroin. As a result, Davis was placed in administrative segregation. He was also tested for drug use; the test came back negative.

*Gallagher's version.* Seeing Davis walking from the lunchroom, Gallagher claims Davis put something in his coat pocket. So Gallagher "shook [Davis] down." During the search, Gallagher discovered that the item in Davis's pocket was a napkin containing a rock-like substance, which proved to be heroin. Davis was handcuffed and taken to a holding cell.

*Investigation and Criminal Proceedings*. Davis met with Inspector Miller. According to Davis, Miller told him that he would be released from segregation only if he revealed who had supplied him with drugs. Davis told Miller that he had no drugs and that the misconduct ticket was thereby false. Miller, according to Davis, responded by threatening to make Davis "suffer."

Davis was also interviewed by Michigan State Police Trooper Bluhm. Davis told Bluhm that Gallagher "said stop and what's in my hand. I told him some season salt. He went in my pocket and there wasn't nothing there. I don't know where he got [the heroin] from, but ain't nothing was on me."

Sometime later, Bluhm appeared before an Ionia County Magistrate Judge at a probable cause hearing. At the hearing, Bluhm testified that Gallagher filed a report in which Gallagher stated that he searched Davis and found a substance that appeared to be heroin in Davis's pocket. Bluhm also noted Davis's allegation that Gallagher planted the heroin. Bluhm added that testing proved the substance to indeed be heroin.

Based on this testimony, the state court determined that there was probable cause to file a felony complaint against Davis. The Ionia County prosecutor in turn charged Davis with one count of felony heroin possession by a prisoner. At trial, a jury found Davis not guilty of the charge.

*Davis's § 1983 action*. Following his acquittal, Davis filed this action, in which he alleged that Gallagher and Miller violated his constitutional rights. Davis framed those claims in four ways: (1) an Eighth Amendment violation for being placed in solitary confinement for threatening to file a grievance against Gallagher; (2) a First Amendment claim of retaliation for threatening to file a grievance; (3) a Fourth Amendment violation (as well as a companion violation of Michigan law) for being subjected to malicious prosecution; and (4) Fourteenth Amendment substantive and procedural due process violations, based upon the same conduct underlying the other constitutional claims.

The district court screened Davis's complaint, as required by the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915A (authorizing the district court to review prisoner complaints against government officials and dismiss claims that fail to state a claim upon which relief may

be granted). On the basis of its threshold assessment, the district court dismissed the claims against Miller. The court similarly dismissed Davis's Eighth Amendment and procedural due process claims against Gallagher. The court allowed Davis to proceed on his substantive due process and First Amendment claims as well as his state and federal malicious prosecution claims.

Next, Gallagher moved for summary judgment on Davis's remaining claims. Citing both 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. § 1915A, the magistrate judge took this opportunity to conduct an independent second "screening" of the complaint. From that review, the magistrate judge recommended that the district court dismiss Davis's substantive due process claim because it was foreclosed by Davis's functionally duplicative malicious prosecution claim. The magistrate judge also recommended that the district court dismiss Davis's First Amendment claim on the ground that Davis was not engaged in a protected activity when the alleged retaliation occurred. Neither of these arguments, Davis notes, were raised by Gallagher in his motion to dismiss.

Both parties filed objections to the Report and Recommendation. Davis, however, did not object to the recommendation that his First Amendment claim be dismissed. The district court denied both parties' objections and adopted the magistrate judge's recommendations. As a result, only Davis's state and federal malicious prosecution claims remained.

Gallagher filed a second motion for summary judgment as to those claims. Among other things, Gallagher argued that Davis could not prove a lack of probable cause to prosecute him for heroin possession. Agreeing that Davis presented "no evidence" that Gallagher planted the heroin, the magistrate judge recommended that Gallagher's motion be granted. Davis filed objections. But the district court denied them, adopted the magistrate judge's reasoning, and dismissed the case. We now take up Davis's appeal.

## II.  ANALYSIS

**A.  The District Court Erred In Granting Summary Judgment To Gallagher on Davis's Malicious Prosecution Claim.**

We review *de novo* the district court's grant of summary judgment to Gallagher on Davis's malicious prosecution claim.  *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018).  Summary judgment is proper only if there is "no genuine dispute as to any material fact" and the defendant is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," we draw all reasonable inferences in the light most favorable to the non-moving party—in this case, Davis. *Id.* at 251–52, 255.

Malicious prosecution claims under both federal and Michigan law share four common elements: "(1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor."  *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015) (quoting *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014)).  Gallagher has so far not contested the third and fourth elements.  And although he does contest the first, the district court did not rule on it below.  In that absence, we will not do so either.

The lone issue ripe for resolution today, then, is the second element; namely, whether probable cause existed to prosecute Davis.  In answering that question in the affirmative, the district court relied entirely on the state court's probable cause determination in the underlying criminal case.  Before we turn to the merits of that decision, however, we take up a threshold argument raised by Gallagher:  that Davis is precluded from arguing that the state-court probable cause determination was incorrect because he did not argue the point in the state court proceeding.

*Preclusion.* Because the probable cause determination in Davis's criminal case was made by a Michigan court, the question of whether Davis is subsequently precluded from arguing that there was no probable cause is an issue of Michigan law. *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738) ("Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state."). Under Michigan law, preclusion applies where a five-part test is satisfied. *United States v. Dominguez*, 359 F.3d 839, 842 (6th Cir. 2004) (listing the elements of preclusion) (citing *Michigan v. Gates*, 452 N.W.2d 627, 630–31 (1990)). For today's purposes, we need focus on just two of those elements: (1) whether there is identity of the issues; and (2) whether the party against whom preclusion is asserted had a full and fair opportunity to litigate the issue. To our eye, Gallagher fails on both fronts.

*Identity of the issues.* Davis contends that the earlier probable cause determination should have no preclusive effect here because it was the product of falsified evidence. That argument has some force. In a case largely indistinguishable from this one, *Darrah v. City of Oak Park*, we held that preclusion does not attach to an earlier probable cause determination where it is alleged that the probable cause finding was influenced by falsified evidence. 255 F.3d 301 (6th Cir. 2001). Specifically, we held in *Darrah* that a § 1983 plaintiff was not precluded from litigating the probable cause element of a malicious prosecution claim despite a Michigan state court's earlier determination that there was probable cause to prosecute the plaintiff in an underlying criminal matter. *Id.* at 311; *see also Hinchman v. Moore*, 312 F.3d 198, 202–03 (6th Cir. 2002). That was so, we explained, because assessing whether there was evidence providing probable cause to prosecute is not always the same inquiry as assessing whether an officer falsified evidence that influenced the probable cause determination. *Darrah*, 255 F.3d at 311.

In an effort to distinguish *Darrah*, Gallagher highlights the fact that Davis did not argue expressly at the probable cause hearing that Gallagher was fabricating evidence. Citing *Peet v. City of Detroit*, 502 F.3d 557 (6th Cir. 2007), Gallagher says that omission precludes Davis from making his falsification argument today. As Gallagher notes, *Peet* did emphasize the fact that the plaintiff there did not argue at the probable cause hearing that the officer falsified relevant

evidence. *Id.* at 566. *Peet* did so, however, to illustrate a broader, more central point: that the record before us was devoid of evidence that the officer falsified probable cause, an absence that was fatal to the plaintiff's claim. *Id.* The point of *Peet* is thus not, as Gallagher would have it, that a falsified probable cause argument must be made at the preliminary hearing. Rather, *Peet* stands for the proposition that, to benefit from our "no preclusion" holding in *Darrah*, a § 1983 plaintiff, when opposing a motion for summary judgment, must produce *some* evidence of probable cause falsification. She cannot rely solely on a bald assertion. In the words of Rule 56, there must be a "genuine dispute" of "material fact" as to whether the officer falsified the evidence. Fed. R. Civ. P. 56(a). Without evidence related to falsification, all that is left for the § 1983 court is to assess the same facts and then answer the same question that was previously litigated; namely, was there probable cause?

Where a plaintiff has reason to believe an officer falsified evidence, one might expect the plaintiff to make that point at the probable cause hearing. *See Hinchman*, 312 F.3d at 203. But that absence is not fatal. And, in fact, there may be practical reasons for not doing so. Probable cause is not a demanding standard for the government to meet. In view of that low bar, a defendant, at that stage, may opt not to put all of her cards on the table, especially to the extent this might inform future trial proceedings. After all, a probable cause hearing that reveals a defendant's trial strategy may do the defendant more harm than good. *Kaley v. United States*, 571 U.S. 320, 354 (2014) (Roberts, C.J., dissenting) ("In light of the low bar of the probable cause standard, many defendants likely conclude that the possible benefits of the hearing are not worth the [risks]."); *see also Vasquez v. Jones*, 496 F.3d 564, 578 (6th Cir. 2007) ("[E]schewing cross-examination at the preliminary examination stage is a reasonable strategy. Extensive questioning would tip the prosecution to the weaknesses in its case, but not likely prevent the defendant from being prosecuted because the state need only show probable cause . . . ."). We leave those strategic judgments to defendants and their counsel.

For today's purposes, it is enough to note that there is evidence in the record from which a reasonable jury could conclude that Gallagher provided false information to establish probable cause. Gallagher thus fails to meet even the "identity of the issues" requirement under Michigan preclusion law.

*Full and fair opportunity to litigate.*  Gallagher's preclusion argument likewise fails on a second, independent ground—that Davis did not have a full and fair opportunity to litigate the probable cause determination in state court.  Because Davis prevailed at the criminal trial that followed the probable cause hearing, he did not have the opportunity to appeal the earlier probable cause determination.  That fact too cuts against affording any preclusive effect today to the earlier judgment.  *See Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 847 (Mich. 2004) (citing Restatement (Second) of Judgements § 28(1)) ("The general rule permits relitigation when '[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action . . . .'").  We thus reject Gallagher's preclusion argument on this basis.

Because preclusion does not bar Davis's malicious prosecution claim, we now take up the merits of the district court's determination that the claim failed at the summary judgment stage.

*Probable Cause.*  Where an officer falsifies the evidence that purports to provide probable cause, that fact typically goes a long way in justifying a malicious prosecution claim brought in a § 1983 action.  *See France v. Lucas*, 836 F.3d 612, 626 (6th Cir. 2016).  And Davis says falsification is exactly what took place here.  Davis testified during his deposition that Gallagher planted the heroin.  Davis told Bluhm the same thing, and Bluhm memorialized as much in his report.  The record thus reflects evidence from which a reasonable jury could conclude that Gallagher planted the heroin and then falsified that fact in his incident report.  That evidence, moreover, creates a genuine dispute of material fact as to whether Gallagher knew that the probable cause evidence was false because he planted heroin on Davis.

That evidence, we note, consists wholly of self-serving statements.  Sometimes, evidence of that nature might not be sufficient to survive summary judgment.  For instance, where self-serving testimony is blatantly and demonstrably false, it understandably may not create a *genuine* issue of material fact, thereby allowing a court to grant summary judgment.  *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that a court, when determining whether there is a genuine dispute of material fact in a case, may ignore testimonial evidence when it is "blatantly contradicted" by video evidence); *see also CenTra, Inc. v. Estrin*, 538 F.3d 402, 419 (6th Cir. 2008) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989) (assuming as

true on summary judgment the nonmoving party's version of events unless that version is "totally implausible")).  But nothing in the record leads us to the conclusion that Davis's claim that Gallagher planted the drugs is demonstrably false or totally implausible.  Although perhaps not as strong as some other evidence might be, self-serving statements can create a genuine dispute of material fact to be resolved at trial.  That appears to be the case here.

Gallagher sees things differently.  He points us to Davis's admission that he was carrying "season salt."  Gallagher views that admission as fatal on the theory that Davis admits he was carrying something, and as there was no salt in Davis's hand, the only thing Davis could have been carrying was heroin.  But the record is not so clear.  Davis, it bears repeating, claimed that he *was* holding salt in his hand, and that Gallagher planted the heroin in his pocket.  We thus do not read the probable cause transcript to wholeheartedly support Gallagher's assertion.  All agree that Davis was carrying something; it is a disputed question whether it was salt or contraband.

Viewed as a whole, the record before us undermines the conclusion below that Davis "presented no evidence to support his theory that Defendant planted drugs on his person." Accordingly, we reverse the district court's judgment on Davis's malicious prosecution claim.

**B.    The District Court Properly Dismissed Davis's First Amendment and Substantive Due Process Claims.**

### 1.    42 U.S.C. § 1997e(c)(1) Empowers A District Court To Dismiss Prison Conditions Related Claims It Deems Frivolous.

The district court undertook a threshold review of Davis's complaint and dismissed some of his claims.  The magistrate judge performed a second review and the district court adopted the magistrate judge's recommendation to dismiss two more claims.  Davis challenges that second review—he contends it was unlawful because, to his mind, the district court is empowered to conduct one threshold review, but nothing more.

Congress has directed the district courts to supervise prisoner lawsuits with a careful eye. The first of those congressional commands is found in 28 U.S.C. § 1915A.  Along with other laws passed as part of the Prison Litigation Reform Act, § 1915A was enacted in response to "a sharp rise in prisoner litigation in federal courts."  *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  As

to that litigation, § 1915A instructs district courts to "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and to dismiss any claim that "is frivolous, malicious, or fails to state a claim upon which relief can be granted." Doing so helps ensure "that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203 (2007). In undertaking this responsibility, time is of the essence: The screening and any subsequent dismissal by the district court must happen "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A.

With respect to a subset of prisoner-initiated lawsuits, Congress has afforded district courts even more authority to dismiss some or all of the claims at issue. In accordance with 42 U.S.C. § 1997e(c)(1), courts have additional dismissal authority over claims brought "with respect to prison conditions." For that type of prison litigation, § 1997e(c)(1) authorizes a district court to dismiss an inmate's action "on its own motion." 42 U.S.C. § 1997e(c)(1). As with § 1915A, dismissal is appropriate under § 1997e(c)(1) where the court determines that the claim "is frivolous, malicious, [or] fails to state a claim upon which relief can be granted . . . ." *Id*. But unlike § 1915A, § 1997e(c)(1) sets no timeline for reviewing or dismissing the prisoner's claims.

We recognize that the magistrate judge and the district court, in their second "screening" decisions, cited both § 1997e(c)(1) and § 1915A, rather than just the former. But that does not undermine those rulings. The plain language of § 1997e(c)(1) authorized the district court to dismiss Davis's prison conditions-related claims on its own motion; § 1915A does not curtail that authority. In other words, whatever threshold dismissal determination a district court makes under § 1915A, it is allowed to make subsequent dismissal determinations in accordance with § 1997e(c)(1) where the claims at issue involve prison conditions.

If § 1915A has any bearing here, it is to reveal that Congress knows how to place time limits on dismissal procedures if it is so inclined. Section 1915A provides a clear deadline to act. That Congress did not use similar language in § 1997e(c)(1) is telling. After all, as § 1915A reflects, Congress knew precisely how to do so. Yet it chose a different path in § 1997e(c)(1).

*See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176–77 (1994) (holding that when Congress omits language from one statute that it included in another similar statute, courts give that choice meaning).

All told, the district court had the authority under § 1997e(c)(1) to dismiss Davis's claims on its own motion, even after it had initially dismissed some claims pursuant to § 1915A. And, as explained next, it properly exercised that authority. We in turn must honor that choice.

## 2. Davis's First Amendment Claim Is Waived.

Davis argues that the district court erred by dismissing his claim that Gallagher unlawfully retaliated against him for engaging in a protected activity, in violation of the First Amendment. Specifically, Davis alleges that he threatened to file a grievance against Gallagher for use of what Davis perceived to be racial slurs. And in response to what Davis classifies as protected activity, Davis says that Gallagher retaliated against him by placing him in administrative confinement.

Whatever the merit of Davis's claim, he has waived it by failing to file an objection to the relevant portion of the magistrate judge's Report and Recommendation. When a party, with the benefit of time, fails to object to an aspect of a magistrate judge's ruling when that ruling is taken up by the district court, that party also waives any future objection to that particular ruling. *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019); *see also United States v. Soto*, 794 F.3d 635, 649 (6th Cir. 2015) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.") (internal quotation marks omitted).

True, we have declined to apply the waiver rule in exceptional circumstances, for instance, where "the district court's error is so egregious that failure to permit appellate review would work a miscarriage of justice." *United States v. Crain*, 432 F. App'x 503, 506 (6th Cir. 2011) (quoting *United States v. 1184 Drycreek Rd.*, 174 F.3d 720, 726 (6th Cir. 1999)). Davis says that we should invoke that exception here to avoid a miscarriage of justice. But he has not explained how finding waiver in this seemingly run-of-the-mill circumstance would amount to anything exceptional or egregious. Under well-settled precedent, then, Davis's claim is waived.

**3.      The District Court Properly Dismissed Davis's Substantive Due Process Claim.**

Davis also challenges the district court's dismissal of his substantive due process claim. The district court concluded that Davis had failed to state a claim upon which relief could be granted. It did so on the basis that the allegations underlying Davis's substantive due process claim could be pursued more directly as a malicious prosecution claim under the Fourth Amendment. Accordingly, the district court held, substantive due process was not the proper vehicle for raising the same issue.

That conclusion finds support in *United States v. Lanier.* There, the Supreme Court explained that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." 520 U.S. 259, 272 n.7 (1997). We have said the same with respect to malicious prosecution claims specifically: they should be pursued by way of the Fourth Amendment, not the Due Process Clause of the Fourteenth Amendment. *Durham v. Estate of Losleben By & Through Tatum*, 744 F. App'x 268, 270 (6th Cir. 2018) (citing *King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017)). Davis's Fourth Amendment malicious prosecution claim (as well as his First Amendment retaliation claim) self-evidently rests upon a specific constitutional provision. Our precedent forbids him from duplicating those claims by repackaging them as matters of substantive due process.

Davis is correct to note that conduct that "shocks the conscience" may, in some instances, give rise to a substantive due process claim. *See County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). But the "shocks the conscience" standard is not an exception to the rule that claims must be brought under specific constitutional provisions if one is applicable. Rather, it is the rubric for analyzing claims that do not arise under specific constitutional provisions. We thus see no error in the district court's resolution of this claim either.

**III. CONCLUSION**

For all these reasons, the district court's judgment is **AFFIRMED** in part and **REVERSED** in part.