NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0128n.06

No. 20-1580

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| AUTUMN SMITH, | ) | **FILED**<br>Mar 11, 2021<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
|  | ) | |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| DAVID WALTERS and KIM TUYLS, | ) | COURT FOR THE WESTERN |
|  | ) | DISTRICT OF MICHIGAN |
| Defendants-Appellees. | ) | |
|  | ) | |

BEFORE:     ROGERS, DONALD, and BUSH, Circuit Judges.

ROGERS, Circuit Judge.  This case arises from an incident at a public Battle Creek City Commission meeting in which the appellant, Autumn Smith, was ejected after making allegedly defamatory and off-topic comments.  Smith briefly returned to the meeting and had a whispered conversation in the back of the room before the police attempted to escort her out.  This caused a commotion, and Smith was later arrested for and charged with the misdemeanor of disturbing a public meeting in violation of Mich. Comp. Laws § 750.170, but was ultimately acquitted.  Smith brought an action alleging a violation of her civil rights under 42 U.S.C. § 1983 against David Walters, the presiding mayor, and Kim Tuyls, the officer who sought a warrant for Smith's arrest. The lawsuit asserted a First Amendment retaliatory prosecution claim and a state law malicious prosecution claim, both of which require Smith to show there was no probable cause to justify her arrest.  Because there was probable cause, however, the district court properly dismissed the suit.

Autumn Smith is an investigative reporter based in Battle Creek, Michigan. She has written pieces that are critical of the city and its police department, which has resulted in longstanding tensions between her and city officials. In 2016, Smith was convicted of filing a false police report after claiming that Police Chief Blocker "dragged her . . . in an assaultive manner" at a City Hall meeting in 2014. At the trial, the government introduced videos and screenshots from security cameras near the location of the alleged assault. Those videos did not show there was any assault, dispelling Smith's claim. In response, Smith introduced testimony at trial indicating that the city's technology infrastructure manager worked with Inspector Brad Wise at the Battle Creek Police Department to decide which surveillance videos to export; videos not exported were deleted from the server. Smith argued that Wise failed to export the video frames that would have corroborated her account, resulting in the deletion of exculpatory evidence. The jury, however, was not persuaded, and convicted Smith for filing a false police report. As part of her sentence, Smith was ordered to do community service. According to Smith, the judge indicated he may be willing to credit Smith's "reporting work" as community service.

Despite her conviction, Smith has maintained that Police Chief Blocker did in fact assault her and that the footage to prove it was deleted. One month after she was sentenced, in May 2016, she attended a Battle Creek City Commission meeting. A series of events at that meeting forms the basis for this suit. During a public comment period, Smith sought and received permission to speak. She introduced herself and announced that she was there "in part to serve the [c]ourt ordered community service from Jim Blocker assaulting [her]." Defendant Walters, the presiding mayor who had granted Smith permission to speak, deemed her comments out of order but permitted her to continue speaking about a separate issue—her concerns about the city manager's

fiscal responsibility.[1]  Later in the meeting, there was a second period for public comment.  Before opening up the floor again, Mayor Walters reviewed the rules for public comment and noted that speakers could not engage in defamatory or slanderous speech or otherwise disrupt the meeting.  Smith again requested and was granted permission to speak.  Echoing her previous comment, Smith re-introduced herself and stated she was there "to serve [her] community service in part Court ordered because Brad Wise destroyed exculpatory evidence that did show Jim Blocker assaulted [her]."  The mayor again ruled Smith out of order and ordered her to leave the meeting.[2]

Smith complied, but a short time later she returned and entered the back of the meeting room.  At that point a different speaker, Jeanine Deal, was at the podium speaking.  As Deal was speaking, Smith approached Michigan Circuit Court Judge John Hallacy, who was seated in the last row.  Smith claims she whispered to him, asking him to sign her community service form.  According to Smith, Mayor Walters saw her talking to Judge Hallacy and gestured to two police officers, Chrenenko and Van Dyke, to remove Smith.  Chrenenko told Smith she needed to leave, and Smith claims that before she had the chance to do so, Estree, another officer, "grabbed [her] arm to physically force [her] to leave."  The police officers assert that when they tried to engage with Smith, she became "animated"; Smith claims that she told Estree not to touch her.  The interaction between Smith and the police resulted in a commotion that distracted the attendees and commissioners, interrupting Deal's comments.  Based on available video footage of the incident, a police officer loudly informed Smith, "You need to go," to which Smith responded, "I'm going."

---

[1] Smith states she attended the meeting to discuss her investigation into the city manager's personal bankruptcy.  Although it is not entirely clear why Smith invoked Blocker (and later, Wise), it appears she may have been trying to explain that her attendance at the meeting and her remarks about the city manager were part of her court-ordered community service.

[2] There is a dispute as to whether she was asked or told to leave.  Because our conclusion that there was probable cause for an arrest does not rest on whether Smith was permitted to remain in the meeting, this dispute is of no consequence.

The officer made an indecipherable comment, and Smith emphasized, "I'm leaving." The police officer can then be heard loudly saying, "Bye-bye," and Smith exited shortly afterwards. The whole incident—from Smith's re-entry to her departure—lasted approximately 20 seconds, and the meeting ended approximately seven minutes later.

After the meeting, Officer Van Dyke submitted an incident report requesting a misdemeanor charge against Smith for disorderly conduct, a violation of the Battle Creek City ordinance. Officer Van Dyke described Smith as becoming boisterous when police tried to remove her, stating that Smith yelled, "Don't touch me," and tried to explain she was talking to the judge. The request was reviewed and approved by Sergeant Madsen, who forwarded it to defendant Officer Kim Tuyls. Tuyls in turn submitted the warrant request, report, and Smith's criminal history to the Battle Creek City Attorney's Office. The city attorney denied the request and indicated the warrant request should be submitted to the Calhoun County Prosecutor's Office, a separate government agency, for independent review. Tuyls did so the next day. Calhoun County Assistant Prosecuting Attorney Angela Easterday denied the warrant but requested more information, asking on the form: "Was suspect disrupting the meeting? Did the meeting cease to move forward due to her behavior?" Tuyls assigned APA Easterday's request to Sergeant Wood, who submitted a supplemental report with additional details and relevant video footage, to Tuyls, who then forwarded the information to Easterday. The supplemental report contained the accounts of police officers and eyewitnesses at the meeting. One account, from Officer Chrenenko, described Smith as argumentative and raising her voice when approached by the police, thus disrupting the meeting. Walters discussed how he had to stop the meeting and restart Deal's time as a result of Smith's loud interaction with the police, while other attendees described how they were distracted by the confrontation and turned in their seats. Easterday reviewed the report, and

on May 24, 2016, she authorized the issuance of a warrant and misdemeanor complaint against Smith for disturbing a public meeting, in violation of Mich. Comp. Laws § 750.170. For reasons disputed by the parties, Easterday did not sign the complaint until August. Smith was tried in February 2017. After the prosecution presented its evidence, Smith moved for a directed verdict, which the judge denied. Smith was ultimately acquitted.

Smith contends that her charges were triggered by a public records request she made concerning a trip to China by the mayor that Smith considered "a junket at taxpayers' expense." In March 2018, Smith initiated this action against Walters, Tuyls, and two of the officers who attempted to remove her at the town hall meeting (Chrenenko and Estree), asserting various causes of action related to the incidents at the meeting and Smith's misdemeanor prosecution. The district court granted defendants' motion to dismiss in part but permitted the First Amendment and malicious prosecution claims against Walters and Tuyls to proceed to discovery. After discovery, Smith filed a partial motion for summary judgment, and defendants filed a cross-motion for summary judgment, arguing there was probable cause to charge Smith with a criminal misdemeanor, that neither Walters nor Tuyls had acted with retaliation, and that defendants are entitled to qualified and governmental immunity. The district court ruled as a matter of law that for each of Smith's claims Smith had to show the absence of probable cause that Smith committed the misdemeanor at issue. The court granted defendants' motion for summary judgment, holding that based on her unsuccessful motion for a directed verdict, Smith was collaterally estopped from relitigating whether there was probable cause to support the charge against her. It also independently concluded that there was in fact probable cause. Smith appeals, and the parties are in agreement that Smith's claim depends on the absence of probable cause to charge Smith with the misdemeanor of disturbing a public meeting.

The district court correctly determined that there was probable cause to find that Smith had committed a misdemeanor by disturbing a public meeting. Under Michigan law, "[a]ny person who shall make or excite any disturbance or contention . . . at any election or other public meeting where citizens are peaceably and lawfully assembled, shall be guilty of a misdemeanor." Mich. Comp. Laws § 750.170.[3]

Smith's altercation with the police provided probable cause that there was a disturbance. The report Easterday reviewed contained various witnesses' accounts that asserted that Smith caused a disruption. According to Officer Estree:

> [When] officers asked Smith to leave[,] Smith began to cause a disturbance that caused the meeting to stop and the people in the front of the room turn around towards the commotion. Once Smith finally left the chambers the meeting was able to resume. [Estree] ma[d]e contact with several witnesses to the disturbance and took statements. . . .
>
> [Witness] Morrison advised that she was witness to Autumn Smith causing a disturbance at the back of City Commission Chambers (after having been asked to leave by Mayor Walters) that caused her to turn toward the commotion to see what was going on. At that point, she saw Smith standing near Judge Hallacy and officers standing near her asking her to leave. . . .
>
> [Witness] Allen stated that Smith caused such a disturbance at the back of room that Mayor Walters had to stop the female who was speaking at the podium and reset her time once Smith finally left. Allen further advised the disturbance caused her to turn in her seat to see what was going on in the back of the room. . . .
>
> [Witness] Lussier stated he heard a commotion at the back of chambers which caused him to turn around to look to see what was going on. There he saw Autumn Smith and officers speaking and heart Lt. Chrenenko advise Smith it was time for her to leave. . . .
>
> [Witness] Gillette [stated that when] Smith was leaving she came back in to speak with Judge Hallacy while the meeting continued. At that time Lt. Chrenenko told Smith to leave which caused Smith

---

[3] The language "excite any disturbance" has been read out of the statute as constitutionally overbroad. *See People v. Vandenberg*, 859 N.W.2d 229, 236 (Mich. Ct. App. 2014); *People v. Purifoy*, 191 N.W.2d 63 (Mich. Ct. App. 1971).

> to get louder. Gillette advised that without a doubt Smith caused a disturbance to the point the Mayor had to delay the meeting because of the commotion she was causing. . . .

> [Mayor] Walters [stated that] Smith was again asked to leave by officers and that is when she got loud. At the time this was occurring at the back of the room, citizen Jeanine Deal, [sic] was at the podium making her general comments. Smith was causing such a disturbance in the back of the room Mayor Walters was forced to ask Deal to stop because she could not be heard over the disturbance and it was not fair to Deal. At that point everyone's attention was on Smith at the back of the room and caused all of us to turn around and look towards the disturbance.

(Caps typeface removed.) This was sufficient for probable cause that Smith violated the meeting disturbance statute. The relevant Michigan provision does not define disturbance, but the Michigan Court of Appeals has supplied the following definition:

> Any act causing annoyance, disquiet, agitation, or derangement to another, or interrupting his peace, or interfering with him in the pursuit of a lawful and appropriate occupation or contrary to the usages of a sort of meeting and class of persons assembled that interferes with its due progress or irritates the assembly in whole or in part.

*People v. Weinberg*, 149 N.W.2d 248, 251 (Mich. Ct. App. 1967) (quoting *Black's Law Dictionary* (4th ed. 1951)). The facts presented to Easterday appear facially to fall within this definition.

This conclusion is supported by the independent denial by the Michigan trial court of Smith's motion for a directed verdict. We do not adopt, however, the district court's alternative reasoning that the Michigan trial court's determination precludes Smith from litigating the issue before us. The difficulty with such an argument is that, because Smith was ultimately acquitted, she could not appeal the trial judge's probable cause determination and was therefore not afforded the opportunity to fully litigate the probable cause issue. *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 847 (Mich. 2004); *see also Davis v. Gallagher*, 951 F.3d 743 (6th Cir. 2020). Our decision today accordingly does not rely upon collateral estoppel.

To be sure, whether Smith's conduct constitutes probable cause may be a close call. Arguably, the police may have been the ones to cause the disturbance; indeed, that may be why Smith was ultimately acquitted. But we may only "look to the objective facts known to the officers at the time of the [arrest]." *United States v. Dickens*, 748 F. App'x 31, 36 (6th Cir. 2018) (alteration in original) (quoting *Smith v. Thornburg*, 136 F.3d 1070, 1074–75 (6th Cir. 1998)). The facts known to APA Easterday when she authorized the criminal complaint were that Smith became loud enough to cause a commotion that made attendees turn around and Mayor Walters to pause the meeting. That there may have been a lack of clarity about the sequence of events and precisely when Smith became loud does not negate the probable cause finding.

Smith's argument that only the police were disturbed by her conduct is belied by the record. To the extent Smith relies on *People v. O'Keefe*, 187 N.W. 282 (Mich. 1922), to argue that there can be no probable cause because the disturbance resulted from her interactions with the police, that argument is not persuasive. We do not read *O'Keefe* so broadly. In that case, the police arrested the defendant on suspicion of pick-pocketing, but charged him with disturbing the peace under a statute prohibiting making a disturbance in a street. *O'Keefe*, 187 N.W. at 283. The Supreme Court of Michigan set aside the conviction, concluding that the jury essentially convicted the defendant for attempted larceny, an uncharged offense, and that the prosecution had not met the elements for disturbing the peace. The court's observation that only police officers were disturbed by the defendant's conduct was in the context of the court's discussion of the disconnect between the defendant's conduct and the charged offense. *Id.* at 283–84. The court was not opining more generally about the conduct that qualifies as a disturbance of the peace. Our understanding of *O'Keefe* is shared by the Michigan Court of Appeals, which recently affirmed that the language Smith points to in *O'Keefe* "was not an assessment of the statutory elements; it

was commentary that the prosecution filed the wrong charges against the defendant." *Michigan v. Rice-White*, No. 350250, 2021 WL 220801, at *4 (Mich. Ct. App. Jan. 21, 2021).

We do not rely on the allegedly slanderous statements made by Smith before she was told to leave the meeting, or on Smith's return to the meeting to talk quietly with Judge Hallacy. Indeed, Smith makes reasonable arguments that these actions could not amount to a disturbance under the statute, and also that in light of the Michigan Open Meetings Act she should not have been told to leave the meeting. It is sufficient that the elements of the misdemeanor of disturbing a meeting were met, at least where plaintiff has not demonstrated that legal errors in running a meeting serve as a legal excuse to that offense.

The judgment of the district court is affirmed.

Appellees' motion for sanctions is denied. Appellant's actions have not been shown to be frivolous, vexatious, or otherwise to warrant sanctions.