NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0309n.06

No. 21-6070

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 28, 2022
DEBORAH S. HUNT, Clerk

CHRISTINA THARP,

      Plaintiff-Appellant,

v.

APEL INTERNATIONAL, LLC,

      Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY

OPINION

Before: NORRIS, SUHRHEINRICH, CLAY, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Christina Tharp appeals the district court's grant of summary judgment in favor of her employer, Defendant Apel International, LLC ("Apel"), on her state law retaliation claim, Ky. Rev. Stat. Ann. § 344.280(1) (West). Tharp alleges Apel refused to hire her as a permanent employee in retaliation for reporting to Apel's human resources director that she was sexually harassed. For the reasons set forth below, we **AFFIRM**.

**BACKGROUND**

**Factual Background**

From early September through mid-December of 2019, Plaintiff Christina Tharp was employed by a staffing company, Adecco USA, Inc. ("Adecco"), and assigned to a 90-day stint as a temporary worker at Apel. Tharp understood that unless and until Apel converted her from a temporary employee to a permanent employee, she was not an Apel employee, she would receive her pay from Adecco, and she was obligated to abide by the policies and procedures of the Adecco Employee Handbook. In other words, Tharp was not "entitled to any benefits or compensation

from any [Apel] benefit plan, policy, or program." (Commitment Sheet, R. 22-3, Page ID #92.) Notably, one policy in force at Apel and applicable to permanent employees was an absenteeism point system. Based on the frequency, duration, and cause of a permanent employee's absence, that employee would receive points. Under Apel's policy, an employee may be subject to termination after accumulating eight points over a twelve-month period.

Although Tharp's assignment to Apel was temporary, Apel had a "policy and practice that temporary workers assigned to Apel could be considered for hiring as Apel employees after they had completed at least 90 days." (Noe Aff., R. 22-6, Page ID ##140–41.) The opportunity to be converted to a permanent employee was contingent upon Tharp's performance during her temporary assignment.

From the beginning, Tharp caused Apel problems. In her first two months assigned to Apel, she missed a shift nearly every week. Collectively, Tharp accumulated at least eight absences in two and a half months. Besides her excessive absenteeism, Apel also suspected Tharp of using drugs at work. Apel's Human Resources Manager, Stephanie Noe, "had concerns that Ms. Tharp may have been abusing substances at work given that she had a purse that she would never leave in her work locker, she was often leaving her workstation clutching that purse, she was often in the bathroom with the purse, and she frequently appeared tired and distracted." (Noe Aff., R. 22-5, Page ID #141.) Tharp was also the subject of a "Critical Incident Report." On November 20, 2019, Tharp's supervisor alleged Tharp committed a "[k]nowing violation of a reasonable and uniformly enforced rule." (Critical Incident Report, R. 22-15, Page ID #163.) Her supervisor complained that despite having been warned multiple times, Tharp was "constantly seen in the breakroom . . . taking breaks and lunches at unscheduled times." (*Id.*)

2

Considering all these problems, Noe indicated that "[she] had no intention of ever hiring [Tharp] as an employee due to the number of issues she had throughout that 90-day period. This became apparent within the first two or three weeks of Ms. Tharp's assignment." (Noe Decl., R. 22-6, Page ID #142.)

On December 2, 2019, Tharp submitted to Noe a complaint alleging another employee had been sexually harassing her since September 2019. Later that same day, Apel Supervisor Mike Garnett reported to Noe that he had informed the accused harasser of the complaint against him and that he resigned immediately. Tharp reported that she never saw the harasser again after she submitted the complaint. Although the harasser no longer worker for Apel, the company wrapped up the investigation a few days later after receiving statements from two other employees verifying that Tharp had been sexually harassed.

Despite having her sexual harassment complaint resolved, Tharp continued to miss work. She called in sick to work on December 7 and December 9, 2019. Then, on December 16, 2019, Tharp again missed work, purportedly due to a back injury. The next morning, Noe emailed Adecco asking that Tharp be released from her assignment with Apel. Noe's reason for terminating Tharp's assignment was that Tharp had "7.5 points in a 3 month period and we only allow 8 in a 12 month period" and that Tharp "called in the past two Mondays." (Noe Email, R. 22-24, Page ID #188.) By the time Tharp was released from her assignment she had accumulated at least eleven total absences in less than four months.

**Procedural Background**

In February 2020, Tharp filed a single count complaint against Apel in Kentucky state court alleging that Apel violated the Kentucky Civil Rights Act ("KCRA") by declining to hire Tharp

as a permanent employee after she submitted a sexual harassment complaint against an Apel employee. *See* Ky. Rev. Stat. Ann. § 344.280(1) (West). Apel removed the action to federal court under diversity jurisdiction in accordance with 28 U.S.C. § 1441.[1]

Apel moved for summary judgment on Tharp's claim arguing that she failed to proffer sufficient evidence to make a prima facie case. Specifically, Apel argued that Tharp's claim of sexual harassment was not the cause of her termination. In any event, Apel argued, even if she had introduced evidence of a causal connection, she failed to demonstrate that Apel's independent reason for terminating her was pretextual. The district court granted the motion, agreeing with Apel that that no dispute as to causation existed. Tharp timely appealed.

## DISCUSSION

This Court reviews summary judgment rulings *de novo*. *Est. of Romain v. City of Grosse Pointe Farms*, 935 F.3d 485, 490 (6th Cir. 2019). Summary judgment is only appropriate where the movant has shown "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A "factual dispute is genuine if it is based on evidence that a reasonable jury could use to return a verdict for the nonmoving party." *Est. of Romain*, 935 F.3d at 490 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In evaluating a summary judgment motion, the court is not "to weigh the evidence and determine the truth of the matter" but rather must "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249. The court must construe the evidence in the record and all

---

[1] "[L]imited liability companies have the citizenship of each partner or member." *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 356 (6th Cir. 2010) (citation omitted). Complete diversity exists in this case because Tharp is a citizen of Kentucky and all Apel's members are non-Kentucky citizens.

inferences to be drawn from it in the light most favorable to the non-movant. *Rachells v. Cingular Wireless Emp. Servs., LLC*, 732 F.3d 652, 660 (6th Cir. 2013).

Section 344.280 of the Kentucky Civil Rights Act ("KCRA") prohibits two or more people from conspiring "[t]o retaliate or discriminate in any manner against a person because [she] . . . has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation[.]" Ky. Rev. Stat. Ann. § 344.280(1) (West). Retaliation claims under the KCRA are evaluated under the same standards as Title VII retaliation claims. *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009); *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 802 (Ky. 2004).

When a plaintiff's claim of retaliation is based on circumstantial evidence, the claim is evaluated using the familiar *McDonnell Douglas* burden-shifting framework. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–05 (1973). The burden first falls on the plaintiff to establish a prima facie case of retaliation by showing that: "(1) . . . she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). Once the plaintiff has made out a prima facie case, the burden shifts to the defendant "to produce evidence of a legitimate, nondiscriminatory reason for its actions." *Id*. If the defendant meets this burden, the plaintiff bears the burden of demonstrating that this legitimate reason is pretextual. *Id*. Here, Apel concedes that Tharp can satisfy the first three elements of the prima facie case, and therefore, the only element of the prima facie case in dispute is causation.

"To show causation, 'a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken' in the absence of the protected conduct." *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 381 (6th Cir. 2002) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). In some circumstances, causation may be inferred solely from the close temporal proximity between the time when an employer learns of an employee's protected activity and the time it takes an adverse action against that employee. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 664 (6th Cir. 2020). "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co*., 516 F.3d 516, 525 (6th Cir. 2008). "But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id*.; *see also Hamilton*, 556 F.3d at 435–36.

Critically, the Supreme Court has expressed concern that "employees who see the proverbial writing on the wall that they are about to be fired should not be able to use Title VII protections to insulate themselves from adverse employment actions that were previously contemplated." *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 507 (6th Cir. 2014). To prevent this, we have held that causation is lacking when an employer follows a pre-existing line of action regardless of the employee's protected action. *Id.* ("'[An employer] proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality,' but where an employer deviates from those lines, temporal proximity can certainly be

evidence of causality." (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (per curiam))).

Because Apel proceeded along previously contemplated lines when it declined to convert Tharp to a permanent employee, Tharp has failed to proffer sufficient evidence of causation. From the time Adecco assigned Tharp to Apel until she submitted the sexual harassment complaint—approximately three months—Tharp missed work on at least eight occasions. Then, when Tharp would show up to work, her supervisor complained that she took excessive breaks despite being warned against such conduct. Worse still, Apel was concerned that Tharp was using drugs at the workplace. But most importantly, Noe testified that "[she] had no intention of ever hiring [Tharp] as an employee due to the number of issues she had throughout that 90-day period. This became apparent within the first two or three weeks of Ms. Tharp's assignment." (Noe Decl., R. 22-6, Page ID #142.)

Considering all this evidence, "the proverbial writing was on the wall" weeks before Tharp filed her sexual harassment complaint. To rebut the idea that she was not on track to be fired, Tharp relies primarily on her own self-serving testimony that Noe allegedly said she would begin the paperwork to convert Tharp to a permanent employee on the same day Tharp submitted her sexual harassment complaint. We recently acknowledged that "self-serving statements can create a genuine dispute of material fact to be resolved at trial." *Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020). However, even if the panel accepts Tharp's testimony as true—that Noe really did say she intended to hire Tharp as a permanent employee—Tharp missed work on several occasions after this alleged conversation. These post-complaint unexcused absences were independently sufficient to not convert Tharp to permanent employee status. *See Kuhn*

*v. Washtenaw Cnty.*, 709 F.3d 612, 628 (6th Cir. 2013) ("This court has previously held that 'an intervening legitimate reason' to take an adverse employment action 'dispels an inference of retaliation based on temporal proximity.'" (quoting *Wasek v. Arrow Energy Servs.*, *Inc.*, 682 F.3d 463, 472 (6th Cir. 2012))).

In a final attempt to demonstrate causation, Tharp points to comparators to argue Apel was not actually proceeding along lines to terminate Tharp prior to her filing of the sexual harassment complaint. Essentially, her argument is that Tharp's unexcused absences could not have led Apel to be on track to terminate her because Apel tolerated excessive absenteeism from other employees.

Tharp relies on four comparators to make her argument. However, three of the comparators were permanent employees unquestionably subject to Apel's internal policies. The only comparator who is even remotely relevant, Shaila Russell, was terminated under similar circumstances. Russell was a temporary employee who racked up significant attendance points; but nevertheless, "due to [her] ability to be flexible, supportive and [a] quick learner," Apel hired her for a permanent position. (New Employee Eval., R. 23–16, Page ID #314.) Approximately three weeks later, in light of Russell's continued attendance issues, Apel decided to terminate her. Apel's decision to hire Russell as a permanent employee supports the proposition that Apel would take a chance on a good employee with attendance problems, but if the attendance problems did not resolve, the employee would be terminated. That is not Tharp's situation. Tharp was a bad employee with attendance problems. She was consistently taking unauthorized breaks, away from her workstation, and suspected of using drugs.

Without the support of Russell as a comparator, Tharp's case boils down to only her self-serving depositional testimony, which, as explained above, is simply not enough for a reasonable factfinder to conclude that she was not converted to a permanent employee in retaliation for filing a sexual harassment complaint. Any reasonably juror would see that the writing was on the wall long before Tharp submitted her complaint to Noe. Accordingly, Tharp's filing of the sexual harassment complaint cannot reasonably be said to be the cause of Apel's decision not to hire her as a permanent employee.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.